## KARWICK *v.* PICKANDS.

1. CUSTOMS AND USAGES—EVIDENCE—CONTRACTS.
   Parties dealing in a business governed by a general usage are presumed to deal subject to the custom, in the absence of stipulations to the contrary.

2. SAME—TOWING CONTRACT—NAVIGATION.
   The court should have permitted defendant to introduce proofs in support of her offer to show that plaintiff, who contracted with defendant to tow logs upon Lake Huron, dealt subject to a usage in that community, known among raftsman, tugmen and those doing business with them, that the owner should bear the loss of a break-up.

3. SAME—TRIAL.
   It was not an answer to the objection made that the jury found the contract was as plaintiff claimed; if the custom had been shown, the jury might have believed defendant's version.

4. SAME—REQUESTS TO CHARGE—TRIAL.
   Defendant's claim, supported by disputed testimony, should have been presented to the jury in accordance with her requests, that if plaintiff's authorized agent, who inspected the boom, directed what booms were to be taken, and that they were then used by defendant, plaintiff could not recover for

insufficiency in quantity or quality thereof. The court erred in limiting the request to the issue as to quality of the boom sticks.

5. SAME.
    If the responsibility up to the time of the storm was on plaintiff, because of such acceptance of the boom, by his agent, he could not shift the responsibility to defendant at the time of storm by stating to defendant that the logs were in her charge.

Error to Cheboygan; Shepherd, J. Submitted June 4, 1912. (Docket No. 5.) Decided July 22, 1912.

Assumpsit by John W. Karwick against Marion R. Pickands for breach of a contract of towage. Judgment for plaintiff. Defendant brings error. Reversed.

*Frost & Sprague*, for appellant.

*D. H. Crowley* and *C. S. Reilley*, for appellee.

STONE, J. The plaintiff, who was a clothing merchant, and had also for about 15 years been engaged in lumbering, on July 14, 1909, had a quantity of logs and posts in Grace Harbor, about 30 miles from Cheboygan, which he desired to have towed to the Lakeside mill near Cheboygan for manufacture. Plaintiff and defendant on the day aforesaid entered into a parol contract relative to the towing, or assisting in the towing of these logs and posts, the exact nature of which contract is in dispute. The plaintiff in his declaration alleged: That in and by the contract the defendant—

" Agreed to tow said logs and posts from the said point where they were then situated, to wit, on the shore of Lake Huron, to the city of Cheboygan, and that, under and by virtue of the terms of said contract, the said defendant then and there agreed to furnish a tug and crew to operate the same for the purpose of towing said logs and posts as hereinbefore mentioned, and also to furnish for the purpose of towing said logs and posts while they were being towed from the shore of Lake Hu-

ron to the city of Cheboygan as aforesaid sufficient boom sticks to make a double wrap around said logs and posts, it being then and there represented by said defendant, her agents and servants, that 120 of said boom sticks would be sufficient for said purpose, the said defendant then and there agreeing to furnish at least 120 boom sticks for said purpose as hereinbefore set forth, and it was also agreed by said defendant, her agents and servants, that said boom sticks so to be furnished as aforesaid would be of good quality and of sufficient size and strength for the intended use thereof. That said plaintiff, in consideration of the covenants and agreements on the part of said defendant as hereinbefore mentioned, agreed to pay said defendant the sum of $25 for each 12 hours the said logs and posts were being towed as aforesaid, and $25 for each 24 hours during the time while the defendant was performing the said contract, other than the actual towing, and the sum of $10 for each 12 hours the said boom sticks were used in the towing of said logs and posts as aforesaid. That thereafter, and on, to wit, the 22d day of July aforesaid, the said defendant, under and by virtue of the terms of said contract, proceeded with her said tug to the point on the shore of Lake Huron where the said logs and posts were located, and that said plaintiff had placed his logs and posts in the water at said point, and that defendant, her agents and servants, then and there violated the terms of said contract, in that she did not cause to be placed around the logs and posts of said plaintiff a sufficient quantity of boom sticks to secure their safe conveyance to the port of Cheboygan, and that said defendant, instead of stringing around the raft of plaintiff a double wrap, then and there placed around said logs and posts a single wrap; and that under and by virtue of the terms of said contract it was the duty of said defendant to have placed around the logs and posts of said plaintiff at least 120 boom sticks, and that defendant also made default in that regard, in that she caused to be placed only 91 boom sticks around said logs and posts, and that the boom sticks so furnished as aforesaid were old and rotten, and insufficient to properly protect the property of said plaintiff in towing same from the point aforesaid to the city of Cheboygan, and that in utter disregard of the rights of said plaintiff, in that an insufficient number of boom sticks were furnished, and in that said boom sticks

were of insufficient size and strength, said defendant, her agents and servants, with said tug proceeded to tow the said logs and posts upon the waters of Lake Huron to the city of Cheboygan aforesaid. Plaintiff further alleges that thereafter, and on, to wit, the night of July 22, 1909, and while said logs and posts were so being rafted and towed as aforesaid, the said raft broke up by reason of defendant's neglect to perform her said contract as hereinbefore mentioned in this regard, that she failed to furnish a sufficient amount of boom sticks, and that the boom sticks so furnished were of insufficient size and strength, and that, by reason thereof, the said logs and posts became scattered upon the waters of Lake Huron and shores, and that defendant, her agents and servants, then and there neglected and refused to notify plaintiff that his said property had been so scattered and lost as aforesaid. And said defendant, her agents and servants, made no attempt to recover plaintiff's said logs and posts as it was her duty then and there to do. And plaintiff suffered great loss, in that he was compelled to employ a large number of men to collect the said logs and posts as aforesaid, and plaintiff then and there suffered great loss in that 2,500 of said logs and posts could not be found, and plaintiff lost them forever. And plaintiff in recovering his said logs was then and there compelled to lay out and did lay out and expend large sums of money by reason of defendant's action as hereinbefore mentioned, to plaintiff's great damage of $2,000, and therefore he brings suit."

Under the plea of the general issue the defendant gave notice, among other things, that she would show that all of the said work done and services rendered by her were under the direction and control of said plaintiff, and as he directed, and that the number of boom sticks furnished were the same as ordered and demanded by the plaintiff.

Upon the trial the testimony on the part of the plaintiff tended to support his declaration as to the terms of the contract, except that plaintiff testified that defendant agreed to furnish 125 boom sticks instead of 120, as alleged. The testimony on the part of the defendant tended to show that she agreed to furnish the use of her tug Clayt and boom sticks at $25 per day for the tug for lying time, and $50 per day for the tug when pulling,

and $10 per day of 24 hours for the use of boom sticks, and that plaintiff agreed to pay $2 per day for 25 boom sticks to be used by him in holding the logs at the mill.

Defendant denied, and the testimony in her behalf tended to support her denial, that she ever agreed to furnish any particular number of boom sticks, or boom sticks of any particular size or quality, but that plaintiff was to have such and so many boom sticks as he might select, and that plaintiff through his authorized employé, to wit, one Burnell, his boomman, examined and selected the boom sticks to be taken, and that these boom sticks were taken. Defendant also offered testimony tending to show that the plaintiff represented to defendant that he had from 200,000 to 225,000 feet of logs to be towed, while the plaintiff claimed that he represented that he had 300,000 feet. It also appeared without dispute that the logs were much smaller than the average run, there being about 40 to the thousand feet, and that an average run would be about 20 to the thousand feet, and that, on that account, it would require a great many more booms to enclose them than would be required for logs of the average size, and defendant claimed that the fact of the size of the logs was not disclosed to her in making the contract. There is no question that plaintiff employed the boomman, Burnell, and paid him, and introduced him to the captain of defendant's tug as his head boomman, before the booms were selected or the work started. Burnell and another boomman, also employed by the plaintiff, went down with the booms. Plaintiff also employed another tug, the Kane, to assist the defendant. It was the claim of the defendant at the trial, and she produced testimony to support it, that before starting for the logs, and before selecting the booms, the plaintiff stated to the captain of defendant's tug that his boomman would know how many boom sticks would be required, and that the whole subject of the number and quality of the boom sticks to be selected, and which were in fact selected, was left to the judgment and discretion of the boomman, Burnell, with

the knowledge and assent of the plaintiff. This was denied by the plaintiff, and there was a sharp conflict in the testimony upon this subject, as well as to who actually had charge of the boom at the time of the breaking up of the boom, whether the captain of the defendant's tug or the boomman, Burnell.

In the examination of the witness E. J. Laway, captain of the tug Kane, on behalf of the defendant, the following occurred:

"*Defendant's Attorney:* Do you know whether there is a custom or usage in this community known among raftsmen, tugmen, and those doing business with them, as to responsibility, where there is a breakup—whether it falls upon the log owner or the tugman? Was there a usage in that respect?

"*Plaintiff's Attorney:* Objected to as not material or proper.

"*The Court:* It seems to me that that is a matter that is too vital to be left to a local custom.

"*Defendant's Attorney:* I offer to show by the witness and by others, so that I won't have to put on other witnesses and simply take up the time of the court—I have witnesses here for that purpose—I offer to show that there was a custom among raftsmen and tugmen and those doing business with them, known to them, generally known, notorious, and one that is definite, and one that is thoroughly used, that where a tug is employed with booms by the day, that the responsibility for the breakup or loss, if there is a loss on account of the breakup, falls upon the log owner, and not upon the owner of the tug or booms.

"*Plaintiff's Attorney:* We submit, your honor, that even upon proof of a custom of that kind, we wouldn't be bound by it in this case.

"*Defendant's Attorney:* I want to make that very definite: That the custom is certain, definite, universal, and notorious in this community.

"*Plaintiff's Attorney:* Mr. Sprague, do you offer that and include in that offer—do you mean to say that you offer to prove that there is a custom in this community, definite and certain, irrespective of any special contract, irrespective of the responsibility of the owner of the boat, or the captain of the boat, irrespective of whether they

are negligent in that care and in the work, that there is such a custom as that? Do you offer to prove that?

"*Defendant's Attorney:* I didn't embody those—

"*Plaintiff's Attorney:* I say, do you offer to prove that?

"*Defendant's Attorney:* No, sir. I offered just what I placed upon the record—

"*Plaintiff's Attorney:* Then I object.

"*Defendant's Attorney:* It is applicable to this contention and proof in this case.

"*The Court:* I will sustain the objection.

"*Defendant's Attorney:* What I mean by applicable to this contention and proof is the proof as to the hiring and letting and the use of the tug—that the custom is applicable to that. I understand the court sustains the objection, and the court will give me the benefit of an exception.

"*The Court:* Certainly.

"*Defendant's Attorney:* I understand from this time it will not be necessary for me to place upon the stand those various witnesses to ask them these questions because it will simply take up the time of the court.

"*Plaintiff's Attorney:* We insist upon that objection if the testimony is proposed.

"*Defendant's Attorney:* And you waive my producing witnesses upon that particular point and asking the question?

"*Plaintiff's Attorney:* Yes."

The plaintiff testified that, when he got to the tug Clayt the night of the breakup before the logs were lost, she was about two miles from the shore with the raft, that, when he got to the tug, he spoke to the captain about the wrapper around the logs, and that the captain spoke of the want of boom sticks, and plaintiff said:

"Did you wrap up the logs?" The captain replied: "No; we ain't got no booms." The plaintiff then asked: "What did you come here without booms for? You are supposed to have booms, double booms around this raft, and an apron, and they have only one wrap around the logs." The captain said he could not do it. The plaintiff testified that he then said: "Well, I am leaving the logs in your charge."

Whereupon the plaintiff left for Cheboygan in the gasoline boat. This claimed interview was denied by the captain.

The case was submitted to the jury, and resulted in a verdict for the plaintiff of $1,207.

The defendant requested the court to charge the jury as follows:

"(2) If you find that the plaintiff hired defendant's tug and booms, and that defendant did not agree to furnish any particular number of booms, and that plaintiff's boomman, Burnell, looked over the booms, and directed what booms were to be taken, and such booms were taken and furnished by defendant, then I charge you that the plaintiff, by his boomman, accepted said booms as sufficient, and your verdict must be for the defendant and against the plaintiff—no cause of action—so far as plaintiff's claim for damages is concerned."

"(6) If the jury find that plaintiff, through his authorized boomman, accepted booms to be taken, the fact that Mr. Karwick said to Capt. Snetsinger at the raft 'the logs are in your charge,' if he did say so, would not place the responsibility on defendant for a breaking up of the raft caused by the booms taken not being sufficient in number or quality."

A judgment pursuant to the verdict was entered, and the defendant has brought the case here upon writ of error.

Many errors are assigned that we shall not specifically refer to.

The fifteenth, sixteenth, seventeenth, eighteenth, and nineteenth assignments of error relate to the ruling of the court in not permitting the witness E. J. Laway to answer the questions relating to the custom or usage, above set forth. It was not claimed that plaintiff did not know of the custom, the objection being that, conceding such a custom to exist, the plaintiff was not bound by it. It should be borne in mind that defendant's version of the contract differed from plaintiff's. Defendant's version was that she agreed to furnish her tug and boom sticks at a certain sum per day—a hiring by the day. It was her

claim that there was no agreement as to any particular number or quality of boom sticks, simply such as plaintiff might select, and which his boomman did select, and she took. That contract, defendant claimed, was made with reference to the custom that the responsibility for the break-up and the resulting loss was on the plaintiff, the owner of the logs. It is urged that the offer to prove the custom was made under the defendant's version of the contract, and that, under that version, it was admissible, and its exclusion was prejudicial error.

It is a general rule that, if there is a general usage applicable to a particular profession or business, parties employing an individual in that profession or business are supposed to deal with him according to that usage. It is said that all trades have their usages, and, when a contract is made with a man about the business of his craft, it is framed on the basis of its usage, which becomes a part of it, except when its place is occupied by particular stipulations. 12 Cyc. p. 1044. In *Van Hoesen* v. *Cameron*, 54 Mich., at page 614 (20 N. W., at page 611), it is said:

"In cases where evidence of usage is admissible at all, it is only on the ground that the parties who made the contract are both cognizant of the usage, and must be presumed to have made their agreement with reference to it."

It may be urged that the offer was not broad enough to show that both parties were cognizant of the custom or usage, but we think that the offer to show that "there is a custom or usage in this community known among raftsmen, tugmen, and those doing business with them," was broad enough to have permitted the evidence to go to the jury. *Pennell* v. *Transportation Co.*, 94 Mich. 247 (53 N. W. 1049). The ruling of the trial court was so broad that it shut out all evidence upon the subject.

But it is said by counsel for the plaintiff that the jury found that the contract made was as alleged by the plaintiff. Whether such would have been the result had the evidence relating to the claimed custom been received

we cannot say. It is one of the things complained of by the defendant that she was not permitted to get her version of the contract before the jury.

The thirty-seventh and thirty-eighth assignments of error complain that the court modified the second request to charge by adding thereto the words, "arising from the quality of the booms;" so that the request as modified and given was as follows:

"I charge you, further, that if you find that plaintiff—that is, Mr. Karwick—hired defendant's tug and booms, and that defendant did not agree to furnish any particular number of booms, that the plaintiff's boomman, Mr. Burnell, looked over the booms, and directed what booms were to be taken, and such booms were taken and furnished by defendant, then I charge you that plaintiff, by his boomman, accepted said booms as sufficient, and your verdict must be for the defendant and against the plaintiff —no cause of action—so far as plaintiff's claim for damages arising from the quality of the booms is concerned."

It is the claim of defendant's counsel that this modification took "the heart out of the request." Upon this subject plaintiff claimed two things: that the booms were insufficient in number and quality. Defendant claimed that there was no agreement as to number or quality. The testimony on her behalf tended to show that such and so many booms were to be taken as plaintiff selected; that Burnell, plaintiff's authorized boomman, went over the entire string of booms, discarding some sticks, putting in lake booms where needed, examining and selecting all the booms and chains, thus selecting the booms to be taken, and which were taken.

Under defendant's version of the contract, and under her testimony, she claimed that plaintiff, through his boomman's examination and selection, accepted the booms, both as to number and quality. The request was presented in that view. The court gave the request as to quality, but refused to give it as to number. Manifestly, under defendant's version of the contract, plaintiff could accept the booms as to number as well as to quality, and

if plaintiff, through his authorized boomman, did accept them, especially after a thorough examination, defendant should not thereafter be held responsible for a loss occasioned either because of lack of number or quality. *Stevenson* v. *Towing Co.,* 103 Mich. 412 ( 61 N. W. 536). To modify the request by refusing to permit the jury to find an acceptance as to number, but permitting them to find an acceptance as to quality, was, we think, erroneous. It ignored defendant's version of the contract, and in view of the claim of the plaintiff at the trial that the quantity or number of booms furnished was insufficient to double-wrap the logs, resulting in the loss complained of, we think that the request as modified and given was prejudicial error.

We are also of opinion that the court should have given defendant's sixth request to charge. Certainly, if the responsibility up, to the time of the storm had been upon the plaintiff, he could not shift that responsibility to the defendant under the circumstances, by simply stating to the captain of defendant's tug, "The logs are in your charge," and thus relieve himself from resulting loss.

We have examined the other assignments of error, and find no reversible error in the matters complained of therein. Many of the questions are not likely to arise upon another trial, in view of what we have said.

For the errors pointed out, the judgment of the circuit court is reversed, and a new trial granted.

MOORE, C. J., and STEERE, MCALVAY, BROOKE, OSTRANDER, and BIRD, JJ., concurred. BLAIR, J., did not sit.