### REDDING *v.* SNYDER.

1. CUSTOMS AND USAGES—CONTRACTS—PARTICULAR STIPULATIONS.
   Parties who contract with a member of a profession or business in which there is a usage of general application, about the business of the craft, constitute the usage a part of the contract except when its place is occupied by particular stipulations.

2. CONTRACTS — CONSTRUCTION — LEVEL FLOORS — CUSTOMS AND USAGES.
   No error was committed in the admission of testimony pertaining to the trade custom in construction work in action by general contractor against carpentry contractor for defective workmanship that latter was responsible for having the floor level prior to plastering of house.

3. TRIAL—BURDEN OF PROOF—MAIN CASE.
   Plaintiff has the burden of proof upon his main case.

REFERENCES FOR POINTS IN HEADNOTES
[1] 55 Am Jur, Usages and Customs § 27 *et seq.*
[2] 55 Am Jur, Usages and Customs §§ 51, 52.
[3] 20 Am Jur, Evidence §§ 135, 136.
[4, 6] 20 Am Jur, Evidence § 137.
[5] 19 Am Jur, Estoppel §§ 49, 65.
[7] 53 Am Jur, Trial § 824.
[8] 20 Am Jur, Evidence §§ 426, 437.
[9] 3 Am Jur, Appeal and Error § 888.

4. SAME—BURDEN OF PROOF—AFFIRMATIVE DEFENSES.

The burden of establishing an affirmative defense is on the party pleading it.

5. ESTOPPEL—PAYMENT—KNOWLEDGE OF DEFECTIVE WORKMANSHIP— WAIVER.

A plaintiff who makes a payment on a contract for services without knowledge of defective workmanship at the time of making such payment could not be held to have waived such defects, hence, would not be estopped from basing a cause of action on such defects.

6. CONTRACTS — PAYMENT — ESTOPPEL — KNOWLEDGE OF DEFECTIVE WORKMANSHIP.

Instruction that defendant, carpenter, who had subcontracted carpentry as to house plaintiff, general contractor, was building for third parties had burden of proving plaintiff knew of defective windows and floor before making complete payment for the job, *held*, proper, since the defenses of estoppel and payment are affirmative defenses.

7. APPEAL AND ERROR—INSTRUCTIONS—INADVERTENT ERROR—CURING ERROR.

Error of trial judge in instructing jury in contractor's action against subcontractor for defective workmanship that if the facts were as defendant claimed, plaintiff "probably" would not be entitled to recover *held*, inadvertent and, at least to some extent, cured by later instruction that plaintiff must establish his claim by a preponderance of evidence on either 1 or both of separate claimed defects or the verdict would be for defendant no cause of action, where no objection to insertion of the word "probably" was made at the time and it may not have been even noticed (CL 1948, § 650.28).

8. EVIDENCE—BEST EVIDENCE—LOST ORIGINAL.

It was not error to admit a copy of printed instructions pertaining to supplier's recommended method of installing windows, where it appears the copy originally furnished had been lost and the one admitted was the same as the lost copy.

9. APPEAL AND ERROR—VERDICT—GREAT WEIGHT OF EVIDENCE—NEW TRIAL.

The Supreme Court does not attempt to improve on a verdict or grant a new trial in a jury case, where the evidence is in direct conflict both as to liability and damages and the verdict cannot be said to be against the great weight of the evidence.

Appeal from the Superior Court of Grand Rapids; Taylor (Thaddeus B.), J.   Submitted January 15, 1958.   (Docket No. 51, Calendar No. 47,636.)   Decided April 14, 1958.   Rehearing denied June 11, 1958.

Action by Bernard A. Redding against Eldridge J. Snyder for damages sustained because of defective workmanship in construction of house.   Verdict and judgment for plaintiff.   Defendant appeals. Affirmed.

*Livingston & Anderson,* for plaintiff.

*Thomas J. Whinery,* for defendant.

EDWARDS, J.   Plaintiff in this case is a builder and defendant the carpenter subcontractor whom he hired to do the carpentry work upon a particular house.

It appears that after many vicissitudes the house was completed to the general specifications of the buyer; but on delivery it was ascertained that the first floor was not level and that the windows did not fit properly.   Plaintiff claims that primarily as a result of these 2 defects (although defendant alleges others were likewise involved), he was forced to reduce the sale price of the house to the purchaser by $2,000.   Thereafter he filed suit against defendant for that $2,000, alleging that the 2 defects referred to resulted from defendant's failure properly to perform his carpentry contract, and claiming damage in the amount of $2,000 therefor.

This case was tried before judge and jury, and the jury awarded plaintiff $1,000.   Defendant appeals to us for a new trial, claiming prejudicial error in the judge's admission of certain testimony, and in the judge's charge.

The purchasers of the house involved were a Mr. and Mrs. Hedberg. They chose the lot in question and entered into an agreement with plaintiff Redding to build the house and sell it to them. Plaintiff had the job done by subcontractors, and it is undisputed that defendant Snyder had only the carpentry subcontract as his responsibility.

In 1 of the counts of plaintiff's declaration, plaintiff alleged:

"3. By virtue of said contract, the relationship established, and the trade customs and practices resulting from the relationship, a duty was imposed upon defendant to exercise due care to avoid damage and injury to plaintiff by performing all of the carpentry work in connection with the house so that upon completion the house would be constructed in a good and workmanlike manner."

Defendant denied the existence of any such trade custom as alleged by the plaintiff, and 1 of his principal arguments on appeal pertains to the admission of evidence pertaining to trade custom and practice.

The most disputed issue involves the question of who was responsible for the level of the floor. It appears that the house to be built was a ranch-type, 1-story house, with a basement. The house was built in wintertime, with the foundations and basement dug into a clay soil. The plans called for a steel I-beam to run the length of the house and to be supported by steel posts in the center and a cement foundation at each end. It is undisputed that this beam was installed by defendant Snyder and that the steel posts were of a "jack" type which allowed for adjusting the height of the beam, and, hence, the level of the floor which they supported.

Plaintiff claimed that after the house was roughed in by defendant, but before the interior plastering was done, heat was installed in the building to thaw

out the basement and the foundations under it. He claims further that the thawing of the ground occasioned contracting of the clay base, and as a consequence that the foundations of the I-beam referred to dropped down, pulling the I-beam out of level and occasioning settling of the first floor. Plaintiff claims that he called defendant Snyder, told him these facts, and requested him to do what was necessary to make the floor level.

He presented various witnesses who testified that the leveling of the floor prior to plastering was a part of the responsibility of the carpenter subcontractor under the trade custom in the area and at the time concerned. The following testimony on this point went into the record, without objection, from a carpenter-contractor called as an expert witness by plaintiff:

"*Q.* I want to ask you whether in the late winter of 1954–1955 there was an established custom existing in the area of 6013 84th street in the city of Grand Rapids, regarding the responsibility for determining that the, or assuring that the floors were even after the rough carpentry?

"*A.* That definitely is the responsibility of the carpenter contractor who contracts to take the labor, that he does his work in a workable way to the satisfaction of the customer, and to the approval of all building inspection.

"Assuming that the sagging of the beam had taken place after the roughing in of the fireplace, but before the application of the plaster and the other finished work, in my opinion this could have been corrected in less than half an hour time with 2 men, simply by putting a jack under and screwing up the post.

"*Q.* Who, according to the custom that you have mentioned existed in this vicinity would have been responsible to see that is done?

"*A.* Carpenter-contractor."

In addition to evidence pertaining to defendant's alleged responsibility for the level of the floor based on trade practice, plaintiff presented evidence calculated to show that defendant had actual knowledge that the floor was not level before the plastering work was done.

The bricklayer on this house, one Myron Oatman, testified that when he was roughing in the basement fireplace he noticed the I-beam in question to be out of line, and had a conference about it with defendant. Oatman's testimony is as follows:

"*Q.* And will you tell us what the conversation was?

"*A.* Well, about the steel beam, what he was going to do about it.

"*Q.* Tell us what you said and what he said?

"*A.* I told him it was over an inch out of level in the span that I had to work—you want to know exactly what he said?

"*Q.* Yes.

"*A.* 'To hell with it,' that is what he said."

On appeal, the first of the issues presented by appellant is a claim of error in the trial judge's admission of evidence pertaining to trade practice.

On the issue of admissibility of such evidence, this Court has said as follows:

"It is a general rule that, if there is a general usage applicable to a particular profession or business, parties employing an individual in that profession or business are supposed to deal with him according to that usage. It is said that all trades have their usages, and, when a contract is made with a man about the business of his craft, it is framed on the basis of its usage, which becomes a part of it, except when its place is occupied by particular stipulations." *Karwick* v. *Pickands,* 171 Mich 463, 471.

See, also, *California Lettuce Growers, Inc.,* v. *Union Sugar Co.,* 45 Cal2d 474 (289 P2d 785, 49

ALR2d 496) ; 55 Am Jur, Usages and Customs, § 24; 25 CJS, Customs and Usages, § 9; 3 Corbin on Contracts, § 556.

We find no error in the admission of testimony pertaining to the trade custom.

Appellant also claims that the judge's charge in effect changed the burden of proof from plaintiff to defendant. In this regard, it is important to note that defendant pleaded 2 affirmative defenses: (1) estoppel, wherein he claimed that he had told plaintiff that the windows could not be properly installed with the particular siding involved, and that plaintiff hold him to go ahead; and (2) waiver, in that defendant claimed that plaintiff completed payment to defendant, being fully acquainted with all the details concerning construction of the house about which plaintiff subsequently complained.

The paragraph of the judge's charge about which defendant complains in relation to burden of proof is as follows:

"Now, of course, as I mentioned here, the defendant claims, of course, that the plaintiff is estopped from prosecuting this action by reason of 2 things, that is, that he instructed the defendant, as far as the windows are concerned, to go ahead and caulk them up and that he knew of their imperfect condition. Of course, that is an affirmative defense, and of course, in such a case, the burden to establish that claim is on the defendant. Likewise, the burden is on the defendant so far as payment is concerned. In other words, it is his duty to establish and prove to you that the plaintiff had knowledge of this defect and permitted the plasterers and lathers to go ahead without having the sagging floors corrected before it was too late."

In the main portion of his charge, the trial judge properly instructed the jury upon the burden of proof which the plaintiff had to carry upon his main case. We believe that as to these 2 defenses, the

burden did shift to defendant. Unless plaintiff had knowledge of the facts referred to by the trial judge at the time of payment, there could have been no waiver. The burden of establishing an affirmative defense is on the party pleading it. *Baumier* v. *Antiau,* 79 Mich 509; *Hatch* v. *Maple Valley Township Unit School,* 310 Mich 516.

The other substantial objection to the judge's charge concerns the following paragraph therefrom:

"Of course if the facts are as the plaintiff claims, he would be entitled to recover. On the other hand, if the facts are as the defendant claims, the plaintiff probably would not be entitled to recover, but that is something that you have got to determine."

The insertion of the word "probably" in the second sentence is obviously error. We believe the error, however, was clearly inadvertent. To some extent, it was cured by these words which we find only a few lines farther on at the conclusion of the judge's charge:

"In the first case, of course, your verdict would be: We find for the plaintiff to his damages, of course, in the sum of so many dollars. If you determine and find and come to the conclusion that the plaintiff has not established his claim by a preponderance of the evidence on either 1 or both of these separate claims, then, of course, your verdict would be for the defendant, No cause of action."

No objection was made at the time to the insertion of the word "probably," perhaps because no one noticed it. This Court dealt with similar evident inadvertence, albeit of a somewhat more hazardous variety, in *Kaminski* v. *Grand Trunk Western R. Co.,* 347 Mich 417, 428, 429. As noted therein, from *Labar* v. *Crane,* 56 Mich 585, 589:

" 'This seems an evident inadvertence, but no one called the attention of the court to his error, and it

is now relied upon for the reversal of the judgment. We cannot think anybody was misled; the error seems to have passed unnoticed at the time, and we may well assume that on both sides the parties either understood the judge to be giving the instruction requested, or they corrected the error in their own minds, and assumed that the jury understood the instruction as he intended it. We do not think the judgment should be reversed for this error.' "

See, also, CL 1948, § 650.28 (Stat Ann 1943 Rev § 27.2618).

Nor do we believe the trial judge erred in admitting into evidence a copy of a printed instruction pamphlet pertaining to the supplier's recommended method of installing the windows, where the record contained the following testimony:

"*Q.* Are these instructions the same as the copy of the instructions that you gave to Mr. Snyder at the time you visited him when he was attempting to, when you were telling him how to install the windows in the house on 84th street?

"*A.* It was the same instructions."

The testimony indicated that the copy originally furnished had been lost. In such a situation, a recognized exception to the best evidence rule allows admission of properly identified exact duplicates. *People, ex rel. Thompson,* v. *Chicago, R. I. & P. R. Co.,* 329 Ill 467 (160 NE 841); *Rex* v. *Watson,* 2 Stark 116 (32 State Tr 1); 4 Wigmore on Evidence (3d ed), § 1234.

We are persuaded that both plaintiff and defendant had ample opportunity, upon properly drawn pleadings, to present evidence on the issues in dispute between them to both judge and jury.

The testimony was in direct conflict both as to liability and as to damages. The jury saw the witnesses and heard the testimony. We cannot say that as to either issue the jury verdict is against the great

weight of the evidence. We do not in such a situation attempt to improve on the verdict or grant a new trial. *Ferries* v. *Copco Steel & Engineering Co.,* 344 Mich 345; *Weeks* v. *Hyatt,* 346 Mich 479; *Trupiano* v. *Cully,* 349 Mich 568.

On our limited appellate function in reviewing decision of trier of facts, see, also, *Barnes* v. *Beck,* 348 Mich 286.

Affirmed. Costs to appellee.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, VOELKER, and KAVANAGH, JJ., concurred.