MICHIGAN UNITED CONSERVATION CLUBS v ANTHONY

Docket Nos. 77-1299, 78-503. Submitted May 2, 1978, at Grand Rapids.
—Decided May 9, 1979.

Michigan United Conservation Clubs (MUCC) brought an action,
under Michigan's Environmental Protection Act (EPA), against
Donald Anthony, Jacob Anthony, Bay Mills Indian Community
and all other persons who claim by virtue of Indian treaty
rights with the United States the right to fish in the waters of
the State of Michigan without compliance with the fish and
game laws and rules and regulations of the State of Michigan
and claimed that the defendants' commercial fishing activities
have impaired and destroyed large portions of the fish popula-
tion in the areas of the Great Lakes off the shores of Grand
Haven and Whitefish Bay and that if such activities were
allowed to continue it would likely impair and destroy the fish
population of the Michigan waters of the Great Lakes. The
plaintiff requested temporary and permanent injunctive relief.
Ottawa Circuit Court, Raymond L. Smith, J., determined that
the defendants were engaging in activities tending to impair or
destroy the fish population in the Great Lakes and issued a
permanent injunction prohibiting the defendants from engag-
ing in commercial fishing in the Michigan waters of the Great

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error §§ 703, 967.
[2] 29 Am Jur 2d, Evidence §§ 4, 10.
  61 Am Jur 2d, Pollution Control § 176 *et seq.*
[3] 35 Am Jur 2d, Fish and Game § 1.
[4] 35 Am Jur 2d, Fish and Game §§ 38, 48.
  15A Am Jur 2d, Commerce § 93.
[5] 41 Am Jur 2d, Indians § 24.
[6] 41 Am Jur 2d, Indians §§ 13, 14, 19.
  16 Am Jur 2d, Constitutional Law §§ 470, 472.
[7] 29 Am Jur 2d, Evidence § 142.
[8] 41 Am Jur 2d, Indians § 19.
  35 Am Jur 2d, Fish and Game § 29 *et seq.*
[9] 41 Am Jur 2d, Indians §§ 11, 19.
[10, 11] 41 Am Jur 2d, Indians § 19.
  35 Am Jur 2d, Fish and Game §§ 6, 29 *et seq.*

Lakes without compliance with the rules and regulations of the Michigan Department of Natural Resources. Jacob Anthony and Bay Mills Indian Community appeal. Donald Anthony appeals separately, by leave granted. The two appeals were consolidated for consideration. On appeal, the defendants seek to have the injunction set aside, claiming 1) that MUCC did not meet its burden of proof and, therefore, was not entitled to injunctive relief and 2) that the commercial fishing law is inconsistent with the rights granted to the defendants under the Treaty of 1836 and that the commercial fishing laws must yield to the treaty. *Held:*

1. Under the EPA a plaintiff is only required to make a prima facie case that a defendant's conduct "has or is likely to pollute, impair or destroy the air, water or other natural resources". The plaintiff adequately established that the conduct of the Anthonys would probably be injurious to the fish population, thus meeting the EPA standard of probable harm. The defendants Anthony failed to rebut the plaintiff's prima facie case. An injunction may issue under the EPA to prevent conduct that will have a probable injurious effect upon a natural resource of the state. The injunctive relief was proper as to both Anthonys. However, the record fails to reveal that any other of the defendants engaged in unregulated fishing, thus the plaintiff failed to establish a prima facie case as to defendants Bay Mills and "All Other Indians".

2. The defendants possess fishing rights pursuant to the Treaty of 1836, but these rights do not extend to commercial fishing of planted fish, such as lake trout.

3. Even if the existing treaty right extends to the commercial fishing of all varieties of fish, the fishing laws and regulations promulgated by the Department of Natural Resources are not precluded by the off-reservation fishing rights of the Indians under the Treaty of 1836, as long as all citizens, Indian and non-Indian, are treated equally. The prohibitions of the regulations of commercial fishing do not require the Indians to yield a protected interest in order to promote the welfare of the state's other citizens.

The injunction is affirmed as to defendants Donald Anthony and Jacob Anthony and dissolved as to defendants Bay Mills and "All Other Indians".

1. APPEAL AND ERROR — EQUITY — DE NOVO REVIEW.

Appellate review of an equity proceeding is *de novo.*

2. HEALTH AND ENVIRONMENT — ENVIRONMENTAL PROTECTION ACT — ACTIONS — PROBABILITY OF HARM TO ENVIRONMENT — STATUTES.

A plaintiff, in an action brought under the Environmental Protection Act, is only required to make a prima facie case that a defendant's conduct has or is likely to pollute, impair or destroy the air, water or other natural resources; such a showing is not restricted to actual environmental degradation but also encompasses probable damage to the environment as well (MCL 691.1201 *et seq.;* MSA 14.528[201] *et seq.).*

3. FISH — GREAT LAKES — MICHIGAN WATERS — PROPERTY OF STATE — STATUTES.

The fish in the Michigan waters of the Great Lakes are the property of the state; the fish are held in trust for all the people of the state in their collective capacity (MCL 308.1; MSA 13.1491).

4. FISH — GREAT LAKES — MICHIGAN WATERS — NATURAL RESOURCES — ENVIRONMENTAL PROTECTION ACT — INJUNCTIVE RELIEF — STATUTES.

The fish population in the Michigan waters of the Great Lakes is a natural resource of the state and an injunction may issue under the Environmental Protection Act to prevent conduct that will have a probable injurious effect upon the fish (MCL 691.1201 *et seq.;* MSA 14.528[201] *et seq.).*

5. INDIANS — TRIBAL ORGANIZATIONS — SOVEREIGN IMMUNITY — INDIVIDUAL MEMBERS.

Indian tribal organizations possess sovereign immunity, but such immunity does not extend to its individual members.

6. INDIANS — CITIZENSHIP — FISHING LAWS — DEPARTMENT OF NATURAL RESOURCES — REGULATIONS — TREATY RIGHTS — STATUTES.

The members of the various Indian tribes are citizens of the United States and are citizens of the state in which they reside; therefore, individual members of an Indian tribe who live in Michigan are subject to the laws of the State of Michigan, including the provisions of the commercial fishing law together with regulations promulgated by the Director of the Department of Natural Resources, unless granted special treaty rights (MCL 308.1 *et seq.;* MSA 13.1491 *et seq.).*

7. INDIANS — FISHING RIGHTS — TREATY RIGHTS — COMMERCIAL FISHING LAWS — REGULATIONS — AFFIRMATIVE DEFENSES.

Parties who are asserting, as an affirmative defense, that the state commercial fishing law is inconsistent with rights granted

to them under a treaty between the United States and the Indian tribe of which they are members and that the provisions of the commercial fishing law must therefore yield to the treaty bear the burden of proof of this defense, the same as with any other affirmative defense.

8. INDIANS — TREATIES — FISH — COMMERCIAL FISHING — DEPARTMENT OF NATURAL RESOURCES.

The fishing rights granted to Indians under the Treaty of 1836 do not extend to the commercial fishing of fish planted in the Great Lakes by the Department of Natural Resources, such as lake trout.

9. INDIANS — TREATIES — FISH — COMMERCIAL FISHING — REGULATIONS.

A validly existing treaty right of certain Indians to commercially catch all varieties of fish, assuming that such a right does exist, does not preclude the enforcement of state fishing regulations as long as the regulations affect all citizens, Indian and non-Indian equally, and the regulations concern a subject not covered by the treaty.

10. INDIANS — TREATIES — FISHING RIGHTS — STATES — REGULATIONS.

The state has limited authority to regulate Indian fishing rights under a Federal treaty; but regulation is valid only if (1) it is necessary for the preservation of the fish protected by the regulation; (2) the application of the regulation to the Indians holding off-reservation fishing rights is necessary for the preservation of the fish protected; and (3) the regulation does not discriminate against the treaty Indians.

11. FISH — COMMERCIAL FISHING — DEPARTMENT OF NATURAL RESOURCES — REGULATIONS — INDIANS — TREATY RIGHTS.

Commercial fishing regulations promulgated by the Department of Natural Resources are applicable to all individuals fishing in the Michigan waters of the Great Lakes; the prohibitions of these regulations are shared equally by all fishermen and do not require Indians who have protected interests under a Federal treaty to yield their protected interests in order to promote the welfare of the state's other citizens.

*Wheeler, Upham, Bryant & Uhl* (by *Robert H. Gillette),* for plaintiff.

*James M. Jannetta,* Upper Peninsula Legal Ser-

vices, Inc., *Kathryn L. Tierney,* Bay Mills Indian Community, and *Bruce R. Green,* Native American Rights Fund, for defendants Jacob Anthony and Bay Mills Indian Community.

*Eleesha M. Pastor,* Michigan Indian Legal Services, for defendant Donald Anthony.

Before: D. E. HOLBROOK, JR., P.J., and BASHARA and R. M. MAHER, JJ.

D. E. HOLBROOK, JR., P.J. Defendants appeal a trial court determination that they are engaging in activities tending to impair or destroy the fish population in the Great Lakes and to set aside a perpetual injunction prohibiting them from engaging in commercial fishing in the Michigan waters of the Great Lakes without compliance with the rules and regulations of the Michigan Department of Natural Resources, hereinafter referred to as the DNR.

Plaintiff, hereinafter referred to as MUCC, had filed suit under Michigan's Environmental Protection Act, hereinafter referred to as the EPA, MCL 691.1201 *et seq.;* MSA 14.528(201) *et seq.,* claiming that defendants' commercial fishing activities have impaired and destroyed large portions of the fish population in the areas off the shores of Grand Haven and Whitefish Bay and that if such activities were allowed to continue it would likely impair and destroy the fish population of the Michigan waters of the Great Lakes. Plaintiff requested temporary and permanent injunctive relief.

A temporary injunction was issued restraining the defendants from fishing in the waters of the State of Michigan without "adherence to the rules and regulations of the Department of Natural Resources and the statutes of the State of Michi-

gan pertaining to commercial fishing and the use of illegal commercial fishing equipment". The matter was brought on for hearing and the court rendered its opinion finding that:

"There is abundant proof that regulation of fishing on the Great Lakes is necessary for the conservation of the fish population and at least for some time to come more reason exists to protect the new plants and survivors so that this natural resource may be restored to the extent that modern means and purpose provides.

"In the opinion of the Court the defendants herein have no existing Treaty Rights to fish but if they have that it is subject to non-discriminating regulation in the interest of conservation."

Subsequent thereto a perpetual injunction was issued as described in paragraph one of this opinion.

A motion for a new trial was then filed which was held in abeyance pending the Supreme Court's opinion in *People v LeBlanc,* 399 Mich 31; 248 NW2d 199 (1976). Following such decision an amended opinion and order were issued, which stated:

"IT IS ORDERED that plaintiffs shall have judgment in the above entitled cause and the defendants, and all other persons similarly situated who claim under the treaty executed March 28, 1836, between the Ottawa Indians and the Chippewa Indians and the United States Government in Washington, D.C. or under the treaty entered into on July 31, 1855, between the same parties have the right to fish in the Great Lakes Waters of the State of Michigan; but in respect to commercial fishing only in compliance with the provisions of the rules and regulations of the Michigan Department of Natural Resources, and that defendants shall be and hereby are perpetually enjoined from commercial fishing in the Michigan Waters of the Great Lakes without

compliance with the rules and regulations of the Michigan Department of Natural Resources."

From this opinion and order defendants appeal.

In reviewing the decision of the trial court we are required to make three inquiries. First we must ascertain whether injunctive relief under the EPA was properly granted. An affirmative response to this question will then require the determination of the existence of an applicable Indian treaty fishing right; and if so found, a determination whether this right is absolute or susceptible to regulation.

## I

### *Injunctions under the EPA.*

Defendants claim MUCC did not meet its burden of proof and, therefore, was not entitled to injunctive relief. This proceeding being equitable in nature, our review is *de novo. Papin v Demski,* 383 Mich 561; 177 NW2d 166 (1970).

Under the EPA a plaintiff is only required to make a prima facie case that:

"the defendant's conduct 'has *or is likely* to pollute, impair or destroy the air, water or other natural resources'. (Emphasis added.) Such a showing is not restricted to actual environmental degradation but also encompasses probable damage to the environment as well." *Ray v Mason County Drain Comm'r,* 393 Mich 294, 309; 224 NW2d 883 (1975).

The word "impair" is defined as:

"To weaken, to make worse, to lessen in power, diminish, or relax, or *otherwise affect in an injurious*

*manner.* " Black's Law Dictionary (Rev 4th Ed). (Emphasis supplied.)

The fish in the Michigan waters of the Great Lakes are the property of the state, MCL 308.1; MSA 13.1491. *Aikens v Dep't of Conservation,* 28 Mich App 181, 183; 184 NW2d 222 (1970). In essence it holds that the fish are held in trust for all the people of the state in their collective capacity. The fish population in the Great Lakes is a natural resource of the state, and an injunction may issue under the EPA to prevent conduct that will have a probable injurious effect upon same.

The EPA requires that the trial court make certain findings of fact to substantiate its actions. *Ray v Mason County Drain Comm'r, supra,* at 308-309. We find the trial court's findings to be sufficient to comply with *Ray.*

The trial court in its initial opinion found that:

"And now to the matter of conservation. Commercial fishing on the Great Lakes has been recorded since 1820. In former days it was a fluorishing industry. There can be no doubt but what Indians engaged in this commercial venture. Late in the 1800's the State began to regulate this industry since it then appeared that it was not an inexhaustible resource as previously believed. In 1908 sport fishing regulations first appeared. By 1960 both commercial and sport fishing had fallen off to the extent that the authorities became alarmed at the loss of this natural resource. In 1964 it became apparent that the Great Lakes would have to be replenished to restore Lake Trout as a natural resource. The war on the lamprey began with successful results, salmon were introduced for the dual purpose of aiding in the eradication of the ale-wife and as a new food resource, and regulations limited the use of the gill net and zoning the waters for the protection of new plantings were promulgated.

"The DNR discovered that only 10% of a plant sur-

vived the first year, most of the mortality coming from natural causes, but indicating that the survivors needed protection in order to live to maturity. A four phase program was inaugurated by the DNR to the end that a viable fishing resource could again be established in the waters of the Great Lakes. This program required 1. Sea Lamprey control, 2. Planting of large numbers of fish, 3. Regulation of the catch by both commercial and sports fishermen, 4. Pollution Control.

"It is well established by convincing evidence that the nylon gill-net, a non-selective device, was a most lethal tool. *That when a modern commercial fisherman was equipped with modern gear, including electronic locating devices, powered fishing tugs and lifting winches that could haul in miles of nets, that there was no limit to the catch.* When such a fisherman invaded the vulnerable zones and depths where fish were in large numbers at certain seasons the chance for survival was small.

"In the opinion of the Court the need for regulation of both commercial and sport fishing in the Great Lakes at this critical time was vividly demonstrated.

\* \* \*

"There is abundant proof that regulation of fishing on the Great Lakes is necessary for the conservation of the fish population and at least for some time to come more *reason exists to protect the new plants and survivors so that this natural resource may be restored to the extent that modern means* and purpose provides." (Emphasis supplied.)

The trial court reiterated these findings in its amended opinion saying:

"Unlike *LeBlanc* the proofs in this case before this Court are overwhelmingly convincing that *unregulated fishing could and would deplete the fish resources of the Great Lakes* to the extent that they would become non-existent." (Emphasis supplied.)

These findings clearly indicate that modern com-

mercial fisherman equipped with lethal gill nets, a powered fishing tug and lifting winches capable of hauling in miles of nets would deplete the fish resources of the Great Lakes. Evidence at trial supports such findings. Jacob Anthony, using such methods, was able to catch approximately 4.95 percent of the total number of lake trout in Whitefish Bay. Donald Anthony, also fishing with these same methods, in the Grand Haven-Muskegon area from April 20, 1971, to September 15, 1971, caught approximately 4.77 percent of the lake trout in that area.

Review of the record fails to reveal that either Bay Mills, as a community, or "All Other Indians" engaged in unregulated fishing, and therefore plaintiff has failed to establish a prima facie case as to defendants Bay Mills and "All Other Indians". Accordingly the judgment as to them is reversed.[1] The evidence does, however, substantiate the trial court's findings that the Anthonys' commercial fishing without compliance with the rules and regulations of the DNR, if allowed to continue, would result in a probable impairment of the population of the lake trout in the Great Lakes. Hence, the trial court's finding that MUCC had established a prima facie case as to both Anthonys is affirmed.

Had the Anthonys been allowed to fish for the balance of the year, in the same manner as they had been doing, their total catch would have been correspondingly higher. The impact upon the fish population, while not precisely ascertainable,

---

[1] Our holding that the Anthonys' methods of fishing must be enjoined while permitting other Indian net fishing to continue is based upon the degree of proven harm each was causing to the lake trout population. In the event that other Indian net fishing should increase above 1972 levels, EPA injunctive relief against them may be appropriate in the future.

would, in both the trial court's and our opinion, probably be injurious to that fish population. Since the standard of the EPA is probable rather than guaranteed harm, defendants have failed to rebut the plaintiff's prima facie case.

## II

*The affirmative defense of treaty fishing rights.*

Holding as we do that the injunctive relief granted was proper as to both Anthonys, we must now address the issue of treaty fishing rights.

The tribal organizations possess sovereign immunity, *United States v United States Fidelity & Guaranty Co,* 309 US 506; 60 S Ct 653; 84 L Ed 894 (1940), but such immunity does not extend to its individual members. *Puyallup Tribe Inc v Dep't of Game of Washington,* 433 US 165; 97 S Ct 2616; 53 L Ed 2d 667 (1977). The members of the various Indian tribes are citizens of the United States[2] and citizens of the state within which they reside.[3] Defendants Donald and Jacob Anthony are thus subject to the laws of the State of Michigan, and in particular the provisions of the commercial fishing law[4] together with the regulations promulgated by the Director of the Department of Natural Resources,[5] unless granted special treaty rights.

As an affirmative defense the Anthonys' claim that the commercial fishing law is inconsistent with the rights granted them under the Treaty of 1836, and its provisions must therefore yield to said treaty. As with other affirmative defenses, the

[2] Act of June 2, 1924, 43 Stat 253, as superseded by § 201(b) of the Nationality Act of 1940, 54 Stat 1137, 1138, 8 USC 1401(a)(2).

[3] US Const, Am XIV, § 1.

[4] MCL 308.1 *et seq.;* MSA 13.1491 *et seq.*

[5] 1954 Administrative Code R 299.721-R 299.891.

party asserting same has the burden of proof. *Redding v Snyder,* 352 Mich 241; 89 NW2d 471 (1958), *Parker v The Associates Discount Corp,* 44 Mich App 302; 205 NW2d 300 (1973).

We are not convinced however that the fishing rights reserved by the Treaty of 1836 have any applicability in this instance. The fish involved in this case are lake trout, which were for all practical purposes eradicated from the Great Lakes by the early 1960's. Their present existence in any significant quantities is due entirely to the DNR's restocking program. The question arises whether the Treaty of 1836 has any applicability to commercial fishing of planted fish. In a series of cases involving the treaty fishing rights of the Puyallup Indians, who were engaged in commercial fishing, the United States Supreme Court stated that:

"It is only to this run [naturally propagated fish] that Indian treaty rights extend." *Dep't of Game of Washington v Puyallup Tribe,* 414 US 44, 49-50; 94 S Ct 330; 38 L Ed 2d 254 (1973) (White, J., concurring).

In subsequent litigation, the Supreme Court of Washington indicated that:

"[T]he rights secured to the tribe under the treaty did not encompass artificially propagated sources of fish." *The Dep't of Game v Puyallup Tribe,* 86 Wash 2d 664, 682; 548 P2d 1058 (1976).

We find the reasoning of those courts to be applicable to the instant case. Accordingly, we find that defendants possess fishing rights pursuant to the Treaty of 1836, but that these rights do not extend to commercial fishing of planted fish such as lake trout.

## III

### Regulations affecting Indian off-reservation fishing rights.

Assuming *arguendo* that defendants have a validly existing treaty right to commercially catch all varieties of fish, does the existence of this right preclude the enforcement of state fishing regulations? We are convinced that it does not as long as the regulations affect "all citizens, Indian and non-Indian equally", *Dep't of Game v Puyallup Tribe, supra,* 86 Wash 2d, at 678,[6] and the regulations concern a subject not covered by the applicable treaty. Where the treaty does not address the specific methods of fishing to be employed:

"[T]he manner of fishing, the size of the take, the restriction of commercial fishing, and the like may be regulated by the State in the interest of conservation, provided the regulation meets appropriate standards and does not discriminate against the Indians." *Puyallup Tribe v Dep't of Game of Washington,* 391 US 392, 398; 88 S Ct 1725; 20 L Ed 2d 689 (1968), and *LeBlanc, supra,* at 60.

The Treaty of 1836 does not address any of these enumerated matters, thus the regulations issued by the DNR may be applied to treaty Indians if:

"(1) It is necessary for the preservation of the fish protected by the regulation;

"(2) the application of the regulation to the Indians holding the off-reservation right is necessary for the preservation of the fish protected;

"(3) and the regulation does not discriminate against the treaty Indians." *LeBlanc, supra,* at 36.

[6] This construction was approved *sub silentio* by the United States Supreme Court in *Puyallup Tribe v Dep't of Game of Washington,* 433 US 165; 97 S Ct 2616; 53 L Ed 2d 667 (1977).

The regulation of commercial fishing by the DNR must therefore be measured against this standard.

The requirement that the regulation be "necessary for the preservation of the fish protected by the regulation" does not mean that the fish would die out but for the regulations; but rather that it is a "reasonable and necessary conservation measure". *LeBlanc, supra,* at 62. We find that it is. The term conservation was defined by *LeBlanc* as measures that serve "to perpetuate the fish to be protected". *LeBlanc, supra,* at 63. Permitted measures to provide for the preservation of fish are not to be limited to the minimum efforts necessary to prevent extinction, but extend to all measures calculated to allow a species to maintain a present population level or to rise to a desired population level.

The record developed clearly demonstrates that the regulation of commercial fishing is a reasonable and necessary conservation measure that is calculated to maintain a stable lake trout population in the Michigan waters of the Great Lakes. Accordingly we find that the regulation of commercial fishing is necessary for the preservation of the fish protected by the regulation.

*LeBlanc, supra,* at 36, also requires the state to show that "the application of the regulation to the Indian holding the off-reservation fishing right is necessary for the preservation of the fish protected". Thus the regulation of commercial fishing can only be applied to Indians possessing off-reservation fishing rights when failure to do so would frustrate a reasonable conservation measure. The record is again conclusive on this issue. The trial court, based upon the massive amounts of lake trout caught by the Anthonys through the use of gill nets, concluded that the continued existence of

such unregulated commercial fishing "would deplete the fish resources of the Great Lakes to the extent that they would become non-existent". We agree with this conclusion and find that the regulation of commercial fishing must be applied to Indians possessing off-reservation fishing rights in order to preserve the fish sought to be protected, and to avoid frustration of a reasonable conservation measure.

The final requirement is that the application of a regulation must not discriminate against the Indians. Indians cannot be required to "yield their own protected interests in order to promote the welfare of the state's other citizens". *LeBlanc, supra,* at 63. The reserved right to fish is a nonexclusive right that is held "in common with the citizens of the State of Michigan". *LeBlanc, supra,* at 61. Rights held "in common" between the state's citizens and nonexclusive off-reservation treaty fishermen have been determined to be the right to "share equally, with other citizens the *opportunity* to take fish". *Dep't of Game v Puyallup Tribe supra,* 86 Wash 2d at 675.

The commercial fishing regulations promulgated by the DNR are applicable to all individuals fishing in the Michigan waters of the Great Lakes. The prohibitions of these regulations are equally shared by all fishermen, and do not require the Indians to yield their protected interests in order to promote the welfare of the state's other citizens. Accordingly, we find that the application of the instant regulations do not discriminate against the treaty Indians.

We therefore hold that the application of the commercial fishing law and its applicable regulations to Indians exercising fishing rights reserved by the Treaty of 1836, if such rights were in fact

reserved, is permissible and that the provisions of the commercial fishing law may be enforced against them.

The decision and injunctive relief ordered as to defendants Donald Anthony and Jacob Anthony are affirmed. The injunction issued as to defendants Bay Mills and "All Other Indians" is dissolved. No costs, a public question involved.