RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 23a0108p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee*,


BAY MILLS INDIAN COMMUNITY; SAULT STE. MARIE
TRIBE OF CHIPPEWA INDIANS; GRAND TRAVERSE BAND
OF OTTAWA AND CHIPPEWA INDIANS; LITTLE RIVER
BAND OF OTTAWA INDIANS; LITTLE TRAVERSE BAY
BANDS OF ODAWA INDIANS,

        *Intervenors-Appellees*,

    No. 22-1946

    *v.*


STATE OF MICHIGAN, and its agents,

        *Defendant-Appellee*,


COALITION TO PROTECT MICHIGAN RESOURCES, fka
Michigan Fisheries Resources Conversation Coalition,

        *Proposed Intervenor-Appellant.*

Appeal from the United States District Court for the Western District of Michigan at Marquette.
No. 2:73-cv-00026—Paul Lewis Maloney, District Judge.

Argued: May 3, 2023

Decided and Filed: May 23, 2023

Before: BOGGS, McKEAGUE, and THAPAR, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Christopher S. Patterson, FAHEY SCHULTZ BURZYCH RHODES PLC, Okemos, Michigan, for Appellant. Kelly M. Drake, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee State of Michigan. Benjamin Richmond, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee United States.

**ON BRIEF:**  Christopher S. Patterson, Stephen O. Schultz, David J. Szymanski Jr., FAHEY SCHULTZ BURZYCH RHODES PLC, Okemos, Michigan, for Appellant.  Kelly M. Drake, Christopher D. Dobyns, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee State of Michigan.  Benjamin Richmond, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee United States.  Mason D. Morisset, Thane D. Somerville, MORISSET, SCHLOSSER, JOZWIAK & SOMERVILLE APC, Seattle, Washington, for Appellee Sault Ste. Marie Tribe of Chippewa Indians.

─────────────

**OPINION**

─────────────

THAPAR, Circuit Judge.  For nearly three years, seven sovereigns have been embroiled in negotiations over who gets to manage the Great Lakes fisheries.  The merits of those negotiations aren't before us, only an antecedent question of civil procedure:  is the Coalition to Protect Michigan Resources ("the Coalition") entitled to intervene in those negotiations just as the parties are approaching a deal?  Under our precedent, the answer is no.  Because the district court properly denied the Coalition's motion to intervene, we affirm.

I.

After extensive litigation beginning in 1973, the United States, the State of Michigan, and five federally recognized tribes[1] entered the Great Lakes Consent Decree of 1985.  Among other things, that decree governed the regulation of Great Lakes fisheries, whose waters the Ottawa and Chippewa Indian Nations ceded to the United States in the 1836 Treaty of Washington.  But that decree wasn't permanent.  Rather, the decree lasted fifteen years.

When that fifteen-year term expired, the parties entered the Great Lakes Consent Decree of 2000.  Unlike its predecessor, this decree had a twenty-year term.  Though that term has since

───────────

[1]Namely, the Bay Mills Indian Community, Sault Ste. Marie Tribe of Chippewa Indians, Grand Traverse Band of Ottawa and Chippewa Indians, Little River Band of Ottawa Indians, and Little Traverse Bay Bands of Odawa Indians.  These tribes are the successors in interest to the Ottawa and Chippewa Indian Nations, which signed the 1836 Treaty.

expired, the district court extended the 2000 Decree indefinitely "until all objections to a proposed successor decree have been adjudicated." R. 2027, Pg. ID 12022.[2]

The latest round of negotiations began about three years ago. At the onset of these negotiations, the district court presiding over this matter granted the Coalition amicus status. The Coalition represents numerous private "sport fishing, boating, and conservancy groups" interested in protecting the Great Lakes. R. 1865, Pg. ID 2070. These groups have long had an interest in this dispute. In fact, several have "had a longstanding role in this case as amic[i] curiae dating back to the origins of this dispute in the 1970s." Coalition Br. 18 (emphasis omitted). And since its amicus status was confirmed in 2019, the Coalition has been able to represent its own interests during in-person and virtual negotiation sessions, caucusing with Michigan during those meetings. It has also been able to meet with the parties and the mediator outside of these negotiation sessions.

Now, the seven sovereigns are in the process of finalizing a new decree. But just as the parties were concluding their negotiations, the Coalition moved to intervene. Why? Because it says that "its relationship with the State deteriorated to the point" that Michigan is no longer "willing or able to adequately represent the Coalition's interests." *Id.* at 24. The Coalition alleges—with some force—that Michigan intends to abandon key provisions of the 2000 Decree, namely those that: (1) promote biological conservation and diversity; (2) allocate fishery resources between sovereigns; and (3) establish commercial and recreational fishing zones. The Coalition particularly objects to the Tribes' use of "non-selective gill nets,"[3] which it claims could decimate fish populations and harm the Great Lakes ecosystem. Coalition Br. 13; *see* Reply Br. 20. Unlike the trap nets used under the 2000 Decree, gill nets kill nearly everything

---

[2]"Much has been written about the perniciousness of consent decrees." *Allen v. Louisiana*, 14 F.4th 366, 375 (5th Cir. 2021) (Oldham, J., concurring) (collecting authorities). Indeed, consent decrees "provide[] the legitimacy of a judicial decision without the reality of a judicial decision." Douglas Laycock, *Consent Decrees Without Consent: The Rights of Nonconsenting Third Parties*, 1987 U. Chi. Legal F. 103, 132 (1987). They often limit the rights of third parties because once the court approves a consent decree, it's difficult to undo. *Id.* And they risk "improperly depriv[ing] future officials of their designated legislative and executive powers." *Frew ex. rel. Frew v. Hawkins*, 540 U.S. 431, 441 (2004). But here, the parties don't challenge the legality of consent decrees, so we save this issue for another day.

[3]A "gill net means a wall of webbing held vertically in the water by weights and floats, and designed to capture fish by means of entanglement." R. 1458, Pg. ID 3220 (cleaned up).

that swims into them.  *See Mich. United Conservations Clubs v. Anthony*, 280 N.W.2d 883, 888–91 (Mich. App. 1979).  Indeed, evidence suggests that the overuse of gill nets could "deplete the fish resources of the Great Lakes to the extent that they would become non-existent."  *Id.* at 891 (cleaned up).

This isn't the first time that the Coalition has sought party status.  Indeed, the Coalition's members have made similar arguments in seven other unsuccessful motions to intervene over the last five decades.

On August 31, 2022, the district court denied the Coalition's most recent motion to intervene, which it made under Federal Rule of Civil Procedure 24(a)(2) and (b).  First, the court held that while the Coalition failed to prove any of the four elements necessary for intervention as of right, "the untimeliness of the motion [was] the most compelling reason to deny."  R. 1985, Pg. ID 11668.  Second, and again focusing on the motion's untimeliness, the court exercised its discretion to deny the Coalition's request for permissive intervention.  Nevertheless, the court promised to consider the Coalition's objections to the parties' proposed decree.  The Coalition then moved for reconsideration.  After that motion was denied, the Coalition appealed.

II.

A.

A party seeking intervention as of right under Rule 24(a)(2) must show that:  (1) the motion was timely; (2) the movant possesses "a substantial legal interest" in the case; (3) the movant's ability to protect its interest will be impaired without intervention; and (4) the existing parties inadequately represent the movant's interest.  *Blount-Hill v. Zelman*, 636 F.3d 278, 283 (6th Cir. 2011).  If the movant fails to meet any one of these criteria, the court must deny intervention as of right.  *United States v. Michigan*, 424 F.3d 438, 443 (6th Cir. 2005).

We review most of these criteria *de novo*.  *Stupak-Thrall v. Glickman*, 226 F.3d 467, 471 (6th Cir. 2000).  But we review the district court's timeliness decision for abuse of discretion.  *Id*.  Why?  Because district courts must consider "all relevant circumstances" of a case to determine whether a motion is timely, including:  (1) the stage of the proceedings;

(2) the purpose for the intervention; (3) the length of time that the movant knew or should've known of its interest in the case; (4) the prejudice to the original parties; and (5) any unusual circumstances militating for or against intervention. *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990). Since district courts are in the best position to evaluate these criteria, we defer to their timeliness determinations unless "we are left with a definite and firm conviction that [they] committed a clear error of judgment." *United States v. Heavrin*, 330 F.3d 723, 727 (6th Cir. 2003) (cleaned up).

Here, the district court found that the Coalition's motion to intervene was untimely. Because the Coalition failed to establish that the court abused its discretion when it made that finding, it's not entitled to intervention as of right under Rule 24(a)(2).

1.

*The stage of the proceedings*. This factor weighs against intervention when movants request party status during the final stages of litigation. *United States v. Tennessee*, 260 F.3d 587, 592–93 (6th Cir. 2001). When is litigation in its "final stages"? As this dispute's decades-long history demonstrates, it's not always easy to tell. So instead of merely considering the sheer amount of time that a case has been pending, our "more critical" reference point is "the [district] court's previously identified 'finish line.'" *Stupak-Thrall*, 226 F.3d at 475 (cleaned up). After all, district courts are more familiar with all the circumstances of their cases and the amount of time needed to resolve them.

Here, the district court identified that "finish line" when it concluded that negotiations had already progressed "far beyond the point that any other party should be permitted to intervene." R. 1985, Pg. ID 11674. On appeal, the Coalition contends that the parties actually weren't close to finalizing a new decree because after the court denied the Coalition's motion, it extended the parties' deadline to submit the new consent decree.

But when the district court denied the motion, it believed that the successor decree was going to be finalized within a month. That is when the previous decree expired. And neither the court nor any of the parties had any reason to conclude otherwise. Indeed, the court didn't

indefinitely extend the 2000 Decree until several months later, when it realized that the new consent decree would not be forthcoming.

Regardless, even if the court foresaw the extension—something the Coalition hasn't established—this factor would still weigh against intervention. That's because even after the court indefinitely extended the 2000 Decree, the parties continued to act as if they were close to resolution. Indeed, they proposed a successor decree less than four weeks after the court extended the deadline. And the court is set to adjudicate any remaining objections to that decree in the coming months. Thus, no matter how you look at it, "the court's previously identified 'finish line' . . . was fast approaching" when the Coalition moved to intervene. *Stupak-Thrall*, 226 F.3d at 475 (cleaned up).

For these reasons, this prong weighs against timeliness.

2.

*The purpose for the intervention.* Our cases approach this factor in two "somewhat inconsistent" ways, either by: (1) "peek[ing] behind the timeliness curtain at the legitimacy of the intervenors' purported interest," or (2) analyzing "whether the would-be intervenors acted promptly in light of their stated purposes." *In re Auto. Parts Antitrust Litig., End-Payor Actions*, 33 F.4th 894, 902 (6th Cir. 2022) (cleaned up). Because we've endorsed both approaches, we review the purpose inquiry as the district court did: in terms of either legitimacy or promptness.

Below, the district court took the legitimacy approach. First, it identified the Coalition's asserted purpose for intervention: to "address matters directly affecting their interests." R. 1985, Pg. ID 11671 (quoting the motion to intervene). Specifically, "[t]he predominate areas of concern for Intervenors' member organizations are the conservation of fishing, boating and wildlife resources within the Great Lakes." R. 1969, Pg. ID 11041. Next, the court considered whether that purpose was legitimate. After noting the Coalition's "extensive participation" in this case as an amicus, the district court concluded that the Coalition's asserted purpose had already "sufficiently been met" without intervention. R. 1985, Pg. ID 11671.

In its appellate briefs and during oral argument, the Coalition identified two purposes for its intervention motion. But as the following shows, neither purpose weighs in favor of timeliness.

First, the Coalition argues that it has an interest in conserving the Great Lakes fisheries, an interest it claims that Michigan no longer seeks to protect. While the Tribes' overuse of gill nets or other questionable fishing practices could seriously "deplete the fish resources of the Great Lakes," it's unclear whether Michigan supported these practices when the district court denied the Coalition's motion to intervene. *Anthony*, 280 N.W.2d at 891 (cleaned up).[4] Nor would we expect the State to do so given that such a position would arguably violate Michigan law.

Indeed, the Michigan Constitution declares that the "conservation and development of the natural resources of the state" is "of paramount public concern." Mich. Const. art. IV, § 52. In other words, Michigan has the "obligation to protect and preserve the waters of the Great Lakes" and the "public right" to fish them. *Glass v. Goeckel,* 703 N.W.2d 58, 64–65 (Mich. 2005) (cleaned up). Of course, if the successor decree ultimately reflects that Michigan abandoned these interests, that would be good reason for the district court to allow the Coalition to intervene—even at the eleventh hour.

At this point, the Coalition hasn't yet shown that Michigan abandoned its obligation to protect the Great Lakes fisheries. To be sure, the Coalition cites several affidavits for the proposition that Michigan no longer seeks to preserve biodiversity. But the district court refused to consider these affidavits because the Coalition introduced them for the first time in its motion for reconsideration. We review that refusal for abuse of discretion. *Sommer v. Davis*, 317 F.3d 686, 691 (6th Cir. 2003); *Shah v. NXP Semiconductors USA, Inc.*, 507 F. App'x 483, 495 (6th Cir. 2012). And here, the Coalition didn't attempt to show abuse of discretion, much less explain

---

[4]To be sure, the 1836 Treaty reserved fishing rights to the Tribes. But "[t]he right of the Indians to engage in gill net fishing is not absolute." *United States v. Michigan*, 653 F.2d 277, 279 (6th Cir. 1981). Rather, that right is subject to Michigan regulations that: (1) reflect "a necessary conservation measure," (2) use the "least restrictive alternative method" of preserving Great Lakes fisheries from irreparable harm, and (3) don't unreasonably discriminate against tribal fishing interests or favor non-tribal interests. *Id.* (citing *People v. LeBlanc*, 248 N.W.2d 199 (Mich. 1976)).

why it failed to produce these affidavits earlier.  Therefore, the district court's decision not to consider the affidavits was not an abuse of discretion.

Moreover, as Michigan and the United States argue on appeal, these affidavits likely contain confidential information.  When the Coalition joined the most recent round of negotiations, it signed a confidentiality agreement, which provides that "statements, disclosures, and representations made by any party . . . or amicus" during negotiations shall not be reported or disclosed "to anyone not a Party" without "the prior consent of all the other Parties."  R. 1966-2, Pg. ID 10974.  Yet in its initial brief, the Coalition used these affidavits to reveal confidential statements made during the decree negotiations.  Though the Coalition's potential breach isn't before us, it further supports the district court's decision not to consider these affidavits.

Granted, the Coalition is in a tough position.  To intervene, it must show that Michigan no longer represents its interests.  And to make that showing, the Coalition probably needs to introduce statements made during the negotiations, which would likely violate its confidentiality agreement.  That said, there's a solution to this predicament, one that the Coalition failed to pursue below:  the Coalition could seek permission from the district court to introduce these affidavits notwithstanding the confidentiality agreement.  But the Coalition didn't do that.  Instead, it attached them to its motion for reconsideration without obtaining permission from the district court or explaining why it failed to file them earlier with its motion to intervene.  Because the Coalition failed to preserve these affidavits for review, we can't consider them.

Thus, the Coalition has failed to show that, as an amicus, it's been unable to protect its interests through discussions with the parties and the mediator.  Looking to Michigan's constitution—and absent any contrary evidence in the record—we presume that the State shares "the same ultimate objective" as the Coalition:  the preservation of the Great Lakes fisheries. *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987) (internal quotations omitted).  That's true even though the Coalition might've "voted differently" than the State on some discrete issues. *Id.* (quoting *United States v. Perry Cnty. Bd. of Educ.*, 567 F.2d 277, 280 (5th Cir. 1978)); *see Stupak-Thrall,* 226 F.3d at 476; *see Blount-Hill,* 636 F.3d at 287–88.  After all, the district court already permits the Coalition to file any objections to the proposed successor decree as an amicus.

Second, during oral argument, the Coalition also argued that it should receive party status to protect its appellate rights. But Rule 24(a)(2) doesn't permit intervention simply because the movant wants to "file motions and appeals rather than merely amicus briefs." *Stupak-Thrall*, 226 F.3d at 477 (cleaned up). Otherwise, movants could always obtain intervention as of right, even when—as is the case here—the intervention motion was untimely. So without more, that interest alone doesn't weigh in favor of timeliness.

Nevertheless, if the successor decree is ultimately unlawful or shows that the government failed to represent the Coalition's interests in biodiversity and conservation, then the Coalition would have good reason to request intervention "for the limited purpose of appeal." *United States v. City of Detroit*, 712 F.3d 925, 932 (6th Cir. 2013) (citation omitted). But at this point, granting such limited intervention would be premature.[5]

For all these reasons, the second prong also weighs against timeliness.

3.

*The length of time that the Coalition knew or should've known of its interest in the case.* Below, the district court concluded that this factor "weigh[ed] against timeliness" because despite knowing its interests "since the beginning of the negotiations," the Coalition "waited three years to raise such interests." R. 1985, Pg. ID 11672. In fact, the Coalition effectively conceded as much: "intervenors have long known of their general interest in this case." *See* R. 1969, Pg. ID 11037 (cleaned up).

But even if we looked beyond that concession, this factor would still weigh against intervention. After all, when the Coalition first moved to join the case as an amicus, it described its interest this way: "[Our] predominate areas of concern . . . are the conservation of fishing, boating and wildlife resources within the Great Lakes." R. 1865, Pg. ID 2075. Three years later, when it moved to intervene, the Coalition stated an almost-identical interest: "[t]he predominate areas of concern for Intervenors' member organizations are the conservation of fishing, boating

---

[5]During oral argument, both the United States and Michigan suggested that they might object if the Coalition ultimately seeks leave to appeal a successor decree. But they don't have the final say. *See City of Detroit*, 712 F.3d at 932.

and wildlife resources within the Great Lakes." R. 1969, Pg. ID 11041. Thus, the Coalition has known of its interest in this matter at least since this round of negotiations began three years ago.

To get around this fact, the Coalition claims that we should consider only the amount of time that has transpired since Michigan allegedly stopped representing the Coalition's interests. But that argument fares no better. Indeed, for almost 50 years, the Coalition has repeatedly—yet unsuccessfully—moved to intervene on the basis that the State no longer represented its interests. So even if the Coalition's recent disagreements with Michigan over "micro-level interests" count as an independent reason to intervene, the Coalition has had similar disagreements for decades. R. 1985, Pg. ID 11669.

In sum, if parties take a "wait-and-see" approach to intervention, they lose on timeliness. *Stotts v. Memphis Fire Dep't*, 679 F.2d 579, 584 & n.3 (6th Cir.1982); *In re Auto. Parts*, 33 F.4th at 904. Here, instead of moving to intervene when this latest round of negotiations began, the Coalition moved to affirm its amicus status. Three years later, it changed its mind. Because this is exactly the kind of "wait-and-see" strategy that our caselaw forbids, the Coalition fails to show why this prong shouldn't weigh against timeliness. *NAACP v. New York*, 413 U.S. 345, 367 (1973); *Blount-Hill*, 636 F.3d at 285–86. *But see City of Detroit*, 712 F.3d at 931 ("Where future progress remains and the intervenor's interests are relevant, intervention may be the most effective way to achieve a full and fair resolution of the case.").

4.

*Prejudice to the original parties*. Below, the district court found that allowing late intervention would destabilize the nearly concluded negotiations and therefore prejudice the parties. Specifically, it concluded that if it granted the Coalition's motion, "many of the agreed-upon terms—the product of intense negotiation and compromise—could vanish, causing further delays." R. 1985, Pg. ID 11672. By contrast, had the Coalition filed its motion earlier, it could've avoided the prejudice that the timeliness inquiry seeks to prevent: that of "a tardy intervenor from derailing a lawsuit within sight of the terminal." *United States v. BASF–Inmont Corp.*, 52 F.3d 326 (6th Cir. 1995) (per curiam) (table).

To challenge this conclusion, the Coalition points to its affidavits, which it claims show that the parties were unlikely to reach a deal when the district court denied its motion to intervene. But as already discussed, the Coalition failed to properly preserve these affidavits for appeal. Moreover, when the district court denied intervention, the parties were in the final stage of negotiations. Thus, the district court reasonably concluded that allowing the Coalition to intervene in August 2022 could've caused costly delays.

Therefore, the prejudice prong weighs against intervention.

5.

*Unusual circumstances.* As the district court noted, this case is unusual because "it involves seven different sovereigns as separate parties." R. 1985, Pg. ID 11673. The Coalition, by contrast, consists of nongovernmental recreational fishing organizations. Granted, this exclusion of private parties further underscores the often-problematic nature of consent decrees: they bind third parties "without the reality of a judicial decision." Laycock, *supra*, at 132. But the Coalition doesn't challenge the legality of consent decrees. And so long as Michigan truly protects the Coalition's—and the public's—environmental and biological interests in the Great Lakes fisheries, it makes some sense to limit participation to the sovereign parties.[6]

In response, the Coalition claims that the "[u]nusual circumstances—namely COVID-19 and the complexity of the negotiations—support the timeliness of the Coalition's intervention." Coalition Br. 30. But that assertion gains no traction. For one thing, the Coalition never made that argument before the district court, meaning it forfeited that argument for appeal. *Puskas v. Delaware County*, 56 F.4th 1088, 1098 (6th Cir. 2023). For another, as an amicus, the Coalition participated in months of in-person and virtual negotiations both before and during the pandemic. In other words, COVID doesn't appear to have justified the Coalition's three-year delay before moving to intervene. Thus, the district court correctly held that the unusual circumstances weigh against timeliness.

---

[6]Of course, if the successor decree or other admissible evidence ultimately shows that Michigan failed to conserve the biodiversity of these fisheries, then this factor may cut the other way. But for current purposes, the Coalition fails to make that showing because it solely relies on affidavits that weren't properly preserved for appellate review.

For all these reasons, the Coalition failed to prove that the district court's untimeliness determination was an abuse of discretion. Because a proposed intervenor can't succeed without establishing timeliness, we needn't address the other factors for intervention as of right under Rule 24(a)(2). *See Michigan*, 424 F.3d at 443.

## B.

Rule 24(b) provides that, "[o]n *timely motion,* the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B) (emphasis added). Because the Coalition's motion wasn't timely, the district court didn't abuse its discretion by denying permissive intervention as well.

\*          \*          \*

For years, seven sovereigns have fought over how to regulate and conserve Great Lakes fisheries. And for good reason. The Great Lakes—and the fish they contain—are an invaluable resource to Michiganders, tribal citizens, and the American people alike.

Thus far, the district court has done a good job managing this difficult and complex case. The Coalition represents an important segment of the public, and the district court has allowed it to participate throughout negotiations as an amicus and even to file objections to the proposed successor decree. In the future, we are confident that the district court will seriously consider any objections or evidence showing how the proposed decree may endanger the Great Lakes fisheries.

If the successor decree is ultimately unlawful or otherwise suggests that Michigan failed to protect this public resource, the proper remedy would be for the district court to give the Coalition the right to appeal that decree. But the Coalition's concerns haven't materialized yet. And it hasn't shown that the district court abused its discretion when it dismissed its motion to intervene as untimely. For these reasons, we affirm.