NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0139n.06

Nos. 23-1944/23-1971

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br>   Plaintiff - Appellee / Cross - Appellant (23-1994/1971), <br><br>      v. <br><br> STATE OF MICHIGAN, and its agents, <br><br>   Defendants - Appellees (23-1944), <br><br> BAY MILLS INDIAN COMMUNITY; SAULT STE. MARIE TRIBE OF CHIPPEWA INDIANS; GRAND TRAVERSE BAND OF OTTAWA AND CHIPPEWA INDIANS; LITTLE RIVER BAND OF OTTAWA INDIANS; LITTLE TRAVERSE BAY BANDS OF ODAWA INDIANS, <br><br>   Intervenors - Appellees (23-19944) <br><br> COALITION TO PROTECT MICHIGAN RESOURCES, fka Michigan Fisheries Resources Conservation Coalition, <br><br>   Amicus Curiae - Appellant / Cross Appellee (23-1944/1971). | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN <br><br> OPINION |

Before: GIBBONS, McKEAGUE, and STRANCH, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. In December 2022, the United States, the State of Michigan, and the Bay Mills Indian Community, the Grand Traverse Band of Ottawa and Chippewa Indians, the Little Traverse Bay Bands of Odawa Indians, and the Little River Band of Ottawa Indians (collectively, the "Stipulating Parties") filed the proposed 2023 Great Lakes Fishing Decree (the "2023 Decree"). The 2023 Decree reflects the Stipulating Parties' effort to

resolve their differences concerning the allocation, management, and regulation of fishing in the Great Lakes waters.

Amicus curiae, the Coalition to Protect Michigan Resources (the "Coalition")—a nonprofit organization representing Michigan-based recreational fishing and conservancy groups—objected to the 2023 Decree's entry. Over the Coalition's objection, the district court entered the 2023 Decree. *United States v. Michigan*, 2023 WL 5444315, at *70 (W.D. Mich. Aug. 24, 2023). The district court concluded that the 2023 Decree preserves tribal treaty rights and conserves the fishery resource. *Id.* The Coalition now challenges the 2023 Decree's entry on appeal. However, this court lacks jurisdiction over this appeal because the Coalition only appears as amicus curiae and was never granted party status through intervention.

I.

In September 2019, the parties, along with several amici, began negotiating a successor decree to the preceding 2000 Decree. In December 2022, after more than three years of negotiations, the Stipulating Parties filed the proposed 2023 Decree. The Coalition filed eleven objections to the entry of the proposed 2023 Decree. The district court held a two-day hearing to conduct oral argument on each objection. At the conclusion of the hearing, the district court allowed the Coalition to file proposed findings of fact and conclusions of law with respect to any of the issues raised in its objections.

In August 2023, following its review of the Coalition's objections and proposed findings, the court overruled its objections to the 2023 Decree. *Michigan*, 2023 WL 5444315, at *70. It found that the 2023 Decree "represents a medium between [the Coalition] and the Sault's objections, and it protects the resource while appreciating the Treaty right." *Id.* at *56. With respect to the Coalition's specific objections, the district court found that: (i) the 2023 Decree's

improved information sharing system, with its notification system, establish a sufficient enforcement mechanism to prevent parties from exceeding their harvest limits, (ii) the 2023 Decree's harvest limits themselves will stem any harmful effect of gillnet fishing, (iii) the 2023 Decree's total catch reporting requirements do not meaningfully overlook incidental bycatch concerns, and (iv) the 2023 Decree's lack of specific mortality rates for Lake Trout and Whitefish, opting for a periodic six-year review instead, reflects the dynamic nature of the fishery resource in a manner that ultimately supports conservation. *Michigan*, 2023 WL 5444315, at *60–68.

Although the district court acknowledged that the Coalition "does not possess any appellate rights," it seemingly granted the Coalition the right to appeal the entry of the 2023 Decree based on the objections the Coalition had raised before it. *Michigan*, 2023 WL 5444315, at *69. In doing so, the district court purportedly relied on language from one of this court's prior opinions in this case which explained that, "if the successor decree is ultimately unlawful or shows that the government failed to represent the Coalition's interests in biodiversity and conservation, then the Coalition would have good reason to *request* intervention 'for the limited purpose of appeal.'" *United States v. Michigan*, 68 F.4th 1021, 1027 (6th Cir. 2023) (emphasis added) (citation omitted).

The Coalition filed a notice of appeal, No. 23-1944, and the United States filed a notice of cross appeal on the issue of the Coalition's right to appeal, No. 23-1971.

II.

Generally, only parties to an action have standing to appeal. *Marino v. Ortiz*, 484 U.S. 301, 304 (1988). A non-party may become a party for purposes of appealing an adverse final judgment by intervening in the action. *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 375 (1987). Under Federal Rule of Civil Procedure Rule 24, a non-party may intervene as of

right or permissively. To intervene as a matter of right, a proposed party must satisfy four elements: (i) the motion to intervene is timely, (ii) the proposed intervenor has a substantial legal interest in the subject matter of the case, (iii) the proposed intervenor's ability to protect that interest may be impaired in the absence of intervention, and (iv) the parties already before the court may not adequately represent the proposed intervenor's interest. *United States v. Michigan*, 424 F.3d 438, 443 (6th Cir. 2005). The proposed intervenor bears the burden of proving each element, and a motion to intervene must be denied if the intervenor cannot satisfy all four elements. *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989).

With respect to permissive intervention, a proposed intervenor must establish that the motion for intervention is timely and must allege "a claim or defense that shares with the main action a common question of law or fact." *Buck v. Gordon*, 959 F.3d 219, 223 (6th Cir. 2020); Fed. R. Civ. P. 24(b)(1)(B). Moreover, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). For both interventions as of right and permissive interventions, a petitioner who unsuccessfully files a motion to intervene is prohibited from appealing anything but the order denying intervention. *City of Cleveland v. Ohio*, 508 F.3d 827, 837 (6th Cir. 2007); *see also In re Associated Press*, 162 F.3d 503, 506 (7th Cir. 1998).

## III.

The Coalition failed to file a motion to intervene in the first instance. The Coalition did not attempt to satisfy the standards for either form of intervention. Consistent with Supreme Court precedent, a non-party petitioner who fails to intervene has no right to an appeal. The Coalition is not an exception to the rule. In *Bender v. Williamsport Area School District*, 475 U.S. 534 (1986), a group of high school students brought First Amendment claims against a school district for

refusing to permit them to form a club for the purpose of promoting "spiritual growth and positive attitudes in the lives of its members." *Id.* at 534. After a district court ruled in the students' favor, Youngman, a member of the school board who was sued only in his official capacity, appealed without first moving to intervene. The Court held that Youngman was required "to make 'timely application' by an appropriate motion 'stat[ing] the grounds' for intervention and 'setting forth the claim or defense for which intervention is sought.'" *Bender*, 475 U.S. at 548 n.9 (citing Fed. R. Civ. P. 24(a), (c)). Because "[n]o such pleading was filed in either of the courts below," the Supreme Court held that the Court of Appeals lacked appellate jurisdiction to hear the appeal. *Id.* at 549. The Coalition, as amicus curiae, cannot circumvent a threshold jurisdictional requirement.

The Supreme Court was similarly explicit in *Marino v. Ortiz*. There, a group of police officers sought to challenge a consent decree approving an agreement settling a Title VII lawsuit against the City of New York. 484 U.S. at 302. The court held that the police officers lacked standing to prosecute the appeal and dismissed the appeal for lack of appellate jurisdiction. *Id.* at 1154. According to the Second Circuit, the police officer's "predicament results from their steadfast refusal to comply with the requirements for intervention set forth in Fed. R. Civ. P. 24." *Hispanic Society of New York City Police Department Inc.* v. *New York City Police Department*, 806 F.2d 1147, 1153–54 (2d Cir. 1986), *aff'd sub nom. Marino v. Ortiz*, 484 U.S. 301 (1988). The Supreme Court unanimously affirmed, holding that "because [the police officers] were not parties to the underlying lawsuit, and because they failed to intervene for purposes of appeal, they may not appeal from the consent decree approving that lawsuit's settlement." *Marino*, 484 U.S. at 304. Consistent with *Bender* and *Marino*, we lack jurisdiction to hear the Coalition's appeal because it failed to file a motion to intervene in the first instance. *Donaldson v. Lyon*, 2021 WL 1625413, at

*1 (6th Cir. Feb. 16, 2021) (dismissing appeal for lack of jurisdiction because appellants never "became a party or an intervenor in the underlying federal action").

The Coalition argues that its treatment in this litigation entitles it to appellate rights. The Coalition relies heavily on this court's holding in *City of Cleveland v. Ohio*, in which we stated that "appeals may be taken by non-parties who were treated on all sides as de facto parties but who never formally intervened." 508 F.3d at 837. But the Coalition cannot credibly argue that that it has been treated as if it were a party when the Coalition, and its members, have repeatedly sought to intervene, unsuccessfully, in eight motions in the last five decades. *See United States v. Michigan*, 68 F.4th 1021, 1024 (6th Cir. 2023) (noting seven prior motions to intervene and affirming the denial of one more). Moreover, *City of Cleveland v. Ohio* itself provides no support for the Coalition's argument that it has been treated as a de facto party. The Coalition removes the statement in *City of Cleveland v. Ohio* from its context.

In *City of Cleveland*, the City challenged the Federal Highway Administration's ("FHWA") withdrawal of federal funds from one of the City's public works projects after the City included a local hiring preference provision as one of its bid specifications and in the contract with a successful bidder. 508 F.3d at 831. The State of Ohio and the Ohio Department of Transportation ("ODOT"), tasked with ensuring that the City complied with federal contracting requirements, subsequently filed a third-party complaint against the FHWA, asserting that ODOT had notified the City that the local hiring provision conflicted with federal law. *Id.* at 834. The City moved to intervene in the third-party action "to alleviate any concern that might exist to [its] appellate standing," but the district court denied that motion. *Id.* at 835. Still, we recognized the City's standing to appeal, noting that, the City of Cleveland "actually was a party to the case, and

it was treated as a de facto party to the [third-party] claim." *Id.* at 837. According to the court in *City of Cleveland*, "[i]f it were not for the City, there would be no controversy in this case." *Id.*

Unlike *City of Cleveland*, the Coalition "was never a party to the action at all." *Id.* As already explained, the Coalition has only held status as amicus curiae. Although the district court recognized that the Coalition has been involved since 2007, and that its member organizations have been amici since the 1980s, it concluded that the Coalition may only "participate in the case as a traditional amicus . . . [with] a very narrow, non-adversarial role that does not rise to the level of 'the full litigating status of a named party or a real party in interest.'" DE 1875, Order Regarding Coalition's Mot., Page ID 2144 (quoting *United States v. Michigan*, 940 F.2d 143, 165 (6th Cir. 1991)). According to the district court, the Coalition, as traditional amicus, "may not 'initiat[e] legal proceedings, fil[e] pleadings, or otherwise participat[e] and assum[e] control of the controversy in a totally adversarial fashion.'" *Id.* (alteration in original) (citation omitted). Unlike in *City of Cleveland*, where the City's actions were the basis for the entire suit, the Coalition has "never been given more than amic[us] status" throughout the decades-long history of this case. DE 1985, Order Denying Mot. to Intervene, Page ID 11666. Therefore, *City of Cleveland* is inapposite. Because the Coalition has never held any other status except that of a traditional amicus, the traditional rule—that a non-party petitioner who fails to formally intervene has no right to an appeal—applies.

The Coalition also relies on *Devlin v. Scardelletti*, 536 U.S. 1 (2002) to support its argument that it was a de facto party. In *Devlin*, the Supreme Court recognized that nonnamed members of a mandatory Federal Rule of Civil Procedure Rule 23(b)(1) class who object to the approval of a settlement have the power to bring an appeal without first intervening. But *Devlin* does not apply to the facts of this case. *See U.S. ex rel. Eisenstein v. City of New York*, 556 U.S.

928, 934 n.3 (2009) (limiting *Devlin* to the "class-action nature of the suit"). *First*, the Coalition is not a member of a Rule 23(b)(1) class nor has any class been certified in the history of this case. Therefore, the Coalition, as amicus curiae, lacks the rights of class members in a class action litigation. *Second*, the Supreme Court's reasoning in *Devlin* was based on its understanding that nonnamed class members are parties to the proceedings to the extent that they are "bound by the settlement." 536 U.S. at 10. The 2023 Decree only binds the sovereign parties—the Tribes, the State of Michigan, and the United States—who have vested rights in the fishery and accompanying regulatory responsibilities. In contrast, the Coalition and its members only participate in the fishery under terms established by the State for members of the public. Therefore, the Coalition is not similarly "bound" by the 2023 Decree.

The Coalition further argues that its de facto role "went significantly beyond that 'non-adversarial' role of amicus curiae" because the court "treated the Coalition as a party, at least for the purposes of objecting to the 2023 Decree." CA6, R. 35, Coalition's Reply Br., at 5. But this is the same argument that the Second Circuit—and later affirmed by the Supreme Court—rejected in *Hispanic Society of New York City Police Department Inc. v. New York City Police Department*, 806 F.2d 1147, 1153 (2d Cir. 1986), *aff'd sub nom. Marino v. Ortiz*, 484 U.S. 301 (1988). Like the Coalition, the would-be intervenors there, a group of police officers, "were never parties in the district court in any capacity." *Id.* Before the district court entered the decree, the police officers had filed written objections and argued them before the district court during a scheduled oral hearing. *See id.* at 1153. The Court of Appeals rejected the police officers' argument, concluding that having filed written objections and argued them at a hearing does not confer party status on the police officers. *Id.* at 1153. In its decision, the Supreme Court affirmed the Court of Appeal's judgment, holding that "the better practice is for such a nonparty to seek intervention for purposes

of appeal." *Marino*, 484 U.S. at 304. In sum, an amicus does not attain party status merely because it was allowed to file objections. *See Michigan*, 68 F.4th at 1027 (declining to grant the Coalition intervenor status because "the district court already permits the Coalition to file any objections to the proposed successor decree as an amicus").

Our court has spoken clearly about the role of an amicus curiae and the need for an amicus to file a formal motion for intervention under Federal Rules of Civil Procedure Rule 24. "Amicus curiae may not and . . . has never been permitted to rise to the level of a named party/real party in interest nor has an amicus curiae been conferred with the authority of an intervening party of right without complying with the requirements of Fed. R. Civ. P. 24(a)." *United States v. Michigan*, 940 F.2d 143, 165 (6th Cir. 1991). We reject the Coalition's assertion that this court impliedly instructed the district court to grant it a right to an appeal sua sponte. In *Michigan*, 68 F.4th at 1030, we affirmed the district court's dismissal of the Coalition's previous motion to intervene. We stated that the Coalition "would have good reason to *request* intervention" through a separately filed motion if it later determined that the 2023 Decree was unlawful or that the State failed to represent its interests. *Michigan*, 68 F.4th at 1027 (emphasis added). This cannot be construed as exempting the Coalition from having to otherwise comply with the requirements of Rule 24 of the Federal Rules of Civil Procedure. *See Michigan*, 940 F.2d at 165 (6th Cir. 1991) ("The intent and purpose of the Federal Rules should not be evaded by acts of judicial legerdemain."). Instead, it was an invitation for the Coalition to "renew" their motion, which it failed to do. *See Michigan*, 424 F.3d at 446.

IV.

For this court to have jurisdiction to hear the Coalition's appeal, the Coalition must have properly become a party to this suit. The rule that only parties may appeal adverse judgments is

not a mere technicality; it provides structure and order that is "essential to the administration of justice." *Broidy Cap. Mgmt. LLC v. Muzin,* 61 F.4th 984, 994 (D.C. Cir. 2023) (citation omitted). As we have stated before, the "evolution of amicus curiae [through] the judicial fiat of 'litigating amicus curiae' . . . transcends the traditional concept of that term within accepted jurisprudence." *Michigan*, 940 F.2d at 166. We have declined to contribute to that evolution previously, and we decline to contribute to that evolution now.

Accordingly, we dismiss the Coalition's appeal for lack of appellate jurisdiction and dismiss as moot the United States's cross-appeal.